# EXAMINER'S REPORT OF BRIAN A. SEROTTA, CPA

Pursuant to orders dated April 7, 2016 I was retained as examiner in The Challah Fairy, Inc. ("Challah") case (Case #15-23686 (RDD)) and Hannah Fischer ("Fischer") (Case #15-23687 (RDD)). The Orders Directing The Appointment of Chapter 11 Examiner dated April 14, 2016 provided, in part, that "the examiner shall promptly file a report on the docket of this case if the examiner concludes that he or she is unable to prepare reasonably accurate monthly operating reports". The order further provided that the examiner "shall not investigate the assets of and transfers by any third party...".

My appointment included reviewing the financial, accounting and bookkeeping records of the Debtors to enable me to (i) determine if any transfers were made from accounts of Debtors out of the ordinary course of business and (ii) determine the feasibility of preparing monthly operating reports.

I met with Ms. Fischer and Mr. Harvey Barr, counsel to both Fischer and Challah, at the Challah retail store. In connection therewith, I:

1. Obtained and summarized the bank statements and cancelled checks for certain bank accounts maintained at Citibank and Peoples Bank for Challah and Fischer in order to ascertain cash receipts and disbursements.

2. Reviewed Challah's use of the point-of-sale ("POS") used for retail sales

3. Discussed the procedures and internal controls relating to cash receipts and bank deposits

4. Discussed the procedures for the preparation of the corporate tax returns for Challah. I also obtained the Federal Income Tax Returns for Challah for the years ended December 31, 2012 to 2015 and the personal income taxes of Ms. Fisher for 2012 to 2014.

## REVIEW OF TRANSFERS

As further discussed below, all transactions of the Debtors did not go through bank accounts of the Debtors. My review of the bank statements disclosed one significant transaction out of the ordinary course of business. The Challah December/January bank statement of Citibank account ending in 1764 disclosed a debit of $80,000.00 which according to Fischer was for the benefit of Mark Fischer to purchase a residence in Pomona, NY. Ms. Fischer stated that this was the proceeds of a loan from a third party. I was unable to obtain documentation supporting this.

The Federal income tax returns for each of the years ended December 31, 2012-2014 disclose a loan payable of $110,000 which amount was unchanged throughout the period. The returns do not specify who made the loans to Challah, the terms of the loans, or the source of the funds. The tax returns further reflect a loan to shareholders of $12,794 and $15,225 as of December 31, 2013 and 2014, respectively. Other than equipment with a net book value of approximately $63,000 at December 31, 2014, the tax returns do not reflect any other significant assets.

No other significant transactions of this nature were observed.

Substantially all transactions on the bank statements were small in size, (usually under $500 and rarely exceeding $2,500.00) and appear to be store operating expenditures such as food and supply purchases.

## CASH MANAGEMENT AND CONTROLS

Challah's business consists of two operating divisions – the retail store and the wholesale business. The retail store's business operates through a POS system which effectively records sales, sales taxes and related items. The wholesale business does not use this or a similar system.

Ms. Fischer informed me that historically she had not deposited all sales proceeds of Challah into corporate bank accounts. Instead, she used portions of the sales proceeds to pay supplier's invoices, store related expenses and, on occasion, salary to Fischer. No records were available recording such disbursements. Excess cash resulting from both division's sales, if any, was then deposited into corporate accounts of the Challah. This lack of controls and incomplete record keeping defeats the primary accounting purpose of having a POS system. As a result, it is not feasible to attempt to reconcile actual sales proceeds and expenses to the bank statements and records.

Fischer maintained personal bank accounts at Citibank through the end of 2012. Fischer previously testified that she used Challah's bank accounts for both Challah and her personal business and comingled funds. Due to the general condition of the books and records, it is not feasible to ascertain a reasonable segregation of these amounts.

This procedure does not comply with accepted bookkeeping procedures or Internal Revenue Service and New York State Department of Taxation and Finance requirements.

A review of the U.S. Income Tax Returns (Form 1120S) of Challah reflect that Fischer received compensation of $1,200 in 2013 and zero in 2014. Fischer did not receive any "S" corporation distributions, representing distributions of previous year's income, in either year. Challah incurred net losses for tax purposes of $10,656 and $15,465 in 2013 and 2014, respectively. The 2015 Federal income tax return of Challah had not yet been filed. The tax returns do not reflect any significant expenditures (such as automobile allowances and related expenses, pensions and similar items) that could possibly be deemed as disguised compensation). Simply stated, according to the books and records of Challah, the only compensation received by Fischer during 2013 and 2014 was an aggregate

of $1,200. As discussed above, Fischer acknowledged that she occasionally takes additional monies from Challah.

## PREPARATION OF TAX RETURNS

I was informed by Fischer that Challah's accountant was not furnished with copies of bank statements with which to prepare the corporate tax returns and that he was furnished other/additional information to enable him to prepare the tax returns. Accordingly, I am unable to determine the accuracy and completeness of debtor's tax returns.

Based upon the lack of proper accounting procedures and controls and incomplete documentation, I do not believe it is feasible to prepare reasonably accurate operating reports for either Challah or Fischer for the period from the inception of the cases to date. Should proper controls be instituted, filing operating reports on a "go forward" basis would be possible.

Very truly yours,

Brian A. Serotta, CPA